IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-4055-CR-C-SRB |
| | ) | |
| | ) | |
| RYAN M. MOBERG, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Ryan M. Moberg's motion to suppress all evidence derived from and during the search of a residence and statements he made to law enforcement on April 4, 2013. (Doc. 32). Defendant alleges that suppression is appropriate in this instance because sufficient evidence to establish probable cause did not exist within the affidavit in support of the search warrant, and the statements given to law enforcement were made while Defendant was "in custody" and without being advised of his rights under Miranda v. Arizona. 384 U.S. 436 (1966). The Government has responded in opposition, asserting that probable cause existed within the affidavit, sufficient to issue a search warrant, and that Defendant was not "in custody," within the meaning of the Fifth Amendment, thus Defendant was not entitled to a recitation of his Miranda rights. (Doc. 37). A hearing regarding this motion to suppress was held on February 23, 2016.

### A. Background

On June 11, 2015, Defendant was charged by superseding indictment with one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and two counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). (Doc. 21). On or about November 26, 2012, Detective Tracy Perkins, with the Boone County Sheriff's Department, Cyber Crimes Task Force, was conducting an investigation on the Gnutella2 network, an open public source, peer-to-peer computer file sharing network, which allows users to exchange files between computers utilizing the network. Det. Perkins was searching for computers on the network that held child pornography. Det. Perkins testified at the hearing that

child pornography files are readily identifiable, based on file hash values. Beginning at approximately 2:25 p.m., Det. Perkins connected with a computer that utilized the IP address 173.18.18.128. After being disconnected and reconnected to this computer several times, Det. Perkins was able to download four separate files from the computer using IP address 173.18.18.128. Though the files were incomplete video files, they were sufficient for Det. Perkins to determine that at least two of the files contained depictions of child pornography, one of which was from a known series, the "Jenny series," which depicted an 8-year-old girl performing oral sex on a dog.

Following this discovery, Det. Perkins conducted a query of the IP address through the American Registry for Internet Numbers (ARIN), and learned that IP address 173.18.18.128 was registered to Mediacom Communications Corporation. Det. Perkins then provided a grand jury subpoena to the Internet Service Provider (ISP) Mediacom, seeking subscriber records for the IP address. Subscriber records obtained from Mediacom indicated that the account was registered to Ryan Moberg, 120 E. Dunklin St., Apt. B, Jefferson City, Missouri. Subsequently, Det. Perkins applied for, and received, a state search warrant authorizing a search of the apartment located at 120 E. Dunklin, Apt. B, Jefferson City, Missouri. On or about April 4, 2013, Investigators served the search warrant on the residence. The apartment was unoccupied at the time of execution. Officers obtained entry and took possession of an Acer tower computer located in a bedroom within the apartment.

The same day the search warrant was executed, Det. Perkins and Detective Andy Anderson went to make contact with Defendant at his place of employment, Mid-West Air Traffic Control, in Jefferson City, Missouri. Det. Perkins testified that she and Det. Anderson never entered the tower, but rather Defendant came down and the three individuals spoke outside, near Det. Perkins' department vehicle. Det. Perkins first showed Defendant her badge and identified herself and Det. Anderson. Det. Perkins then explained that she worked internet crimes and told Defendant that her investigation had led her to him. Defendant agreed to answer questions from Det. Perkins, and was informed that he was not under arrest, that he did not have to talk with her, and that he was free leave. The interview was recorded and admitted into evidence at the hearing as Government's Exhibit 2.

During the interview, Defendant verified that he lived at 120 E. Dunklin St., Apt. B, Jefferson City, Missouri. Defendant further stated that he knew the search term "PTHC" stood

for preteen hardcore, and that he had used this search term while searching for child pornography. Defendant also stated that he had searched for files using the term "Jenny." When Det. Perkins pointed to a file name that contained the title "kait 5yo," Defendant indicated that he knew this referred to a five year old. Defendant admitted during the interview that he had intentionally downloaded child pornography, and that he would watch the videos and masturbate. He stated that when he downloaded such files he was not thinking straight, that such conduct was the result of a moment of weakness, and frequently happened when he had been drinking alcohol. Defendant stated that he would feel bad and would delete the files. The entire interview lasted about an hour and at the conclusion Dets. Perkins and Anderson left the Defendant's place of employment. Defendant was not arrested pending completion of the investigation.

**B.  Analysis**

Defendant, in his suggestions in support of his motion to suppress, argues first that the affidavit in support of the search warrant, authorizing the search of 120 E. Dunklin St., Apt. B, Jefferson City, Missouri, was without probable cause and therefore the search was unlawful. Defendant further contends that because the search was unlawful, any and all evidence resulting is the fruit of an unlawful search and therefore suppression of such evidence is required. Second, Defendant further alleges that the statements he made to Dets. Perkins and Anderson during the recorded interview at his place of employment on or about April 4, 2013 must be suppressed, as they were made while he was "in custody" under the Fifth Amendment, and he had not been advised of his rights under Miranda. The Government has responded in opposition to these allegations, claiming that sufficient facts were set forth within the affidavit to establish probable cause, therefore the warrant to search the apartment was lawfully issued and executed. Further, the Government contends that the Defendant was not "in custody" during the interview with Dets. Perkins and Anderson, and therefore advising Defendant of his Miranda rights was not required.

The Fourth Amendment of the United States Constitution provides, among other things, that individuals shall not be subjected to unreasonable searches and seizures without probable cause. U.S. CONST. amend. IV. Probable cause to issue a search warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238 (1983); United Sates v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986). Further, whether

3

probable cause is present is determined under a common-sense evaluation of the totality of the circumstances. Gates, 462 U.S. at 238. If a common-sense decision, based on all the surrounding circumstances, demonstrates a fair probability that contraband will be found in a particular place, then issuance of a search warrant is proper. Id.

In this case, Defendant argues that the affidavit in support of the search warrant did not set forth sufficient facts to support a finding of probable cause justifying the issuance of a search warrant. Specifically, he argues that the affidavit was deficient because the information did not independently corroborate that the IP address 173.18.18.128 actually was associated with a computer inside the residence of 120 E. Dunklin St., Apt. B, Jefferson City, Missouri. Defendant concedes that Det. Perkins provided independent corroboration of the information received from Mediacom that Defendant resided at the address. Defendant claims that, "[t]he judge who signed this search warrant was left to speculate that Mediacom must have gotten it right when they somehow connected the provided IP address with a computer in the residence despite the fact that Mediacom did not guarantee the accuracy of the information they were providing." (Doc. 32 at 5). Defendant states that had Det. Perkins provided a statement asserting the reliability of Mediacom in her affidavit, then there would not be reason to corroborate the information about the IP address they provided to law enforcement. However, since no such statement was provided in the affidavit, suppression is necessary. The Court is not persuaded by Defendant's argument on this point.

Defendant is attempting to liken an ISP providing information regarding an IP address to that of a confidential informant. However, the Court does not find the two to be the same. Unlike an informant of whom the Judge does not know the identity, and therefore cannot assess the reliability of the information, here the affidavit stated that ARIN reported the IP address to be registered to Mediacom Communications Corp.[1] The information obtained from business records of a company whose identity is disclosed to the Court does not carry with it the same reliability concerns that are present when information is derived from an unidentified informant. Additionally, it is noted that Det. Perkins provided a very detailed description of IP addresses,

---

[1] The affidavit in support of the search warrant was admitted into evidence at the February 23, 2016 hearing as Government's Exhibit 1. On page four (4) of the affidavit, Det. Perkins states, "On Monday, November 26, 2012 I conducted a query on the IP address 173.18.18.128 through the American Registry for Internet Numbers (ARIN). ARIN reported IP address 173.18.18.128 to be registered to Mediacom Communications Corp."

4

how they can be used to identify computers, and how subscriber information relating to a particular IP address is registered to various ISPs. The Court here finds that the information provided from the ISP, specifically the address associated with the IP address, carries with it indicia of reliability and therefore is of the opinion that such information need not be corroborated independently as suggested by Defendant in this case.

The Court finds that sufficient evidence was present within the four corners of the affidavit, such that probable cause existed, and therefore issuance and execution of the search warrant was proper. Consequently, Defendant's claim that suppression is warranted because the affidavit was issued without probable cause is meritless and should be denied. The Court now turns to Defendant's second argument, that the statements made to Dets. Perkins and Anderson should be suppressed, because they were made while he was "in custody" and without being advised of his Miranda rights.

In Miranda v. Arizona, the Supreme Court held that individuals who are in custody must be advised of their rights, prior to questioning. 384 U.S. 436 (1966). However, such individuals are only entitled to Miranda warnings while being interviewed by law enforcement "in custody," meaning that there has been "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1124-25 (1983) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). Whether an individual was "in custody" is an objective inquiry. United States v. Lowen, 647 F.3d 863, 866-67 (8th Cir. 2011). "To determine whether a defendant was in custody for Miranda purposes, a court looks to the totality of the circumstances confronting the defendant at the time of the interview, and asks 'whether a reasonable person in his position would consider his freedom of movement restricted to the degree associated with a formal arrest'." United States v. Huether, 673 F.3d 789, 794 (8th Cir. 2012) (quoting United States v. Flores-Sandoval, 474 F.3d 1142, 1146 (8th Cir. 2007)). The Eighth Circuit has provided guidance on the question of custody in United States v. Griffin, a case cited by both the Government and Defendant, by providing several factors for the Court to consider when determining whether an individual was "in custody" while being questioned by law enforcement. 922 F.2d 1343 (8th Cir. 1990). The factors to be considered are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with

5

> authorities or voluntarily acquiesced to the official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Id. at 1349. These factors should not, however simply be tallied up, and custody decided based on the number of factors that weigh for or against custody, "[t]he ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest." United States v. Czichray, 378 F.3d 822, 828 (8th Cir. 2004).

Here, Dets. Perkins and Anderson came to Defendant's place of work, but did not enter the air traffic control tower. Defendant was informed from the outset that he was not under arrest, and that he did not have to speak with the officers. Defendant voluntarily chose to answer the detectives' questions. He was never handcuffed or restrained in any manner. Detective Perkins explained to Defendant how her investigation had led her to him, and then proceeded to ask him questions, to which he voluntarily responded. Only two detectives, dressed in plain clothes, were present and interviewed Defendant, in private, outside of the building near the detectives' two unmarked vehicles. While testifying at the February 23, 2016 hearing, Det. Perkins described Defendant as "very polite" and that the interview was "a very relaxed conversation." At the conclusion of the interview, the detectives thanked Defendant and left the premises. Defendant was not arrested at that time, but rather returned to his workplace.[2]

The Court finds that the characteristics surrounding this interview are not consistent with a custodial interrogation. The detectives made Defendant aware that he did not have to speak with them and that he was not under arrest, however, Defendant voluntarily acquiesced to answer their questions. Defendant was neither handcuffed or restrained during the interview, nor was he arrested at its conclusion. The atmosphere was not police dominated as there were only two officers, dressed in plain clothes, driving unmarked police cars, and Det. Perkins testified that neither her nor Det. Anderson brandished or displayed their firearm during the interview. Additionally, the Court finds that no strong arm tactics or deceptive stratagems were utilized during the interview. Therefore, the Court finds Defendant's contention that statements made during the interview should be suppressed because they were in violation of his rights under Miranda and the Fifth Amendment to be meritless, and the motion to suppress should be denied.

---

[2] The Court's independent review of Government's Exhibit 2, the recording of the interview, independently corroborates Det. Perkins' description of the relaxed, non-custodial nature of the interview of Defendant.

6

### C. Conclusion

For the reasons stated above, the Court concludes that Defendant's contentions regarding suppression of evidence in this case are meritless, and his motion to suppress should be denied. Probable cause existed, sufficient to support the issuance and execution of the search warrant, in this case. Further, Defendant was not in custody during the interview with Dets. Perkins and Anderson, therefore a recitation of his Miranda rights was not required. Consequently, all the evidence obtained during the execution of the search warrant, and the statements made during the interview were lawfully discovered, and need not be suppressed.

IT IS THEREFORE RECOMMENDED that Defendant's motion to suppress should be DENIED. (Doc. 32).

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 15th day of March, 2016, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge